Eastern District of Kentucky
FILED
AUG 18 2006
AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

CIVIL ACTION NO. 06-CV-31-DLB

CHARLES X. PERKINS     PETITIONER

VS:     **MEMORANDUM OPINION AND ORDER**

SUZANNE R. HASTINGS     RESPONDENT

\*\*\*\*\*    \*\*\*\*\*    \*\*\*\*\*    \*\*\*\*\*    \*\*\*\*\*

Charles X. Perkins ("Perkins") is a *pro se* petitioner incarcerated at the United States Penitentiary-Big Sandy in Inez, Kentucky. He has submitted a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241 and has paid the $5.00 filing fee.

This matter is before the Court for screening. 28 U.S.C. §2243; *Demjanjuk v. Petrovsky*, 612 F.Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970)); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970). This is a *pro se* petition and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, 28 U.S.C. §1915(e)(2) permits a court to dismiss a case at any time if the court determines that the action is (i) frivolous or malicious or (ii) fails to state a claim upon which relief can be granted.

**BACKGROUND**

On June 23, 1979, Perkins was convicted in the District of Columbia of first-degree burglary, robbery, first-degree murder, and felony murder. He was subsequently convicted on September 17,

1979, of sodomy. He was sentenced on August 7, 1981, to a cumulative sentence of 23 years to life.

Perkins first became eligible for parole after serving 270 months of his sentence. On July 18, 2002, the United States Parole Commission ("U.S.P.C.") held an initial parole hearing for Perkins. At the hearing, the U.S.P.C. applied the parole guidelines set forth at 28 C.F.R. §2.80 and determined that Perkins should be denied parole at that time. It also established July 2005 as the preliminary time for a reconsideration hearing [Record No. 1, Exh. A].

Prior to the reconsideration hearing, a U.S.P.C. pre-hearing officer conducted a pre-hearing interview with Perkins on May 19, 2005. The pre-hearing officer's report indicated that, applying 28 C.F.R. §2.80, while Perkins had served within the guideline range for parole, nonetheless that result would not adequately reflect the violence of the underlying crimes, and therefore an upward departure was warranted. Perkins was denied any award for superior program achievement under 28 C.F.R. §2.80(e)(1), (k). The report recommended denying parole, and the U.S.P.C. adopted that recommendation by Notice of Action dated June 21, 2005 [Record No. 1, Exh. B].

## DISCUSSION

### 1. Exhaustion of Administrative Remedies.

Federal prisoners are required to exhaust administrative remedies before filing a habeas corpus petition under 28 U.S.C. §2241. *United States v. Oglesby,* 52 Fed.Appx. 712, 714 (6th Cir. 2002) (*citing United States v. Wilson*, 503 U.S. 329, 335 (1992) and *United States v. Cobleigh*, 75 F.3d 242, 251 (6th Cir. 1996)); *Little v. Hopkins*, 638 F.2d 953, 953-54 (6th Cir. 1981) (petitioner not excused from exhausting claim challenging disciplinary charge even where he could not have done so prior to parole hearing); *Hardwick v. Ault*, 517 F.2d 295, 296 (5th Cir. 1975) ("[T]he federal courts have imposed upon federal prisoners the requirement that they 'exhaust their administrative remedies in accordance with Bureau of Prisons policy ...'"). This requirement is not mandated by

2

the Prison Litigation Reform Act, but is wholly judge-made. *Wesley v. Lamanna*, 27 Fed.Appx. 438, 438-39 (6th Cir. 2001).

In his petition, Perkins asserts that it would be futile to require him to exhaust his administrative remedies because the U.S.P.C.'s June 21, 2005 Notice of Action expressly stated that "the above decision is not appealable." While prisoners in federal custody for a violation of the United States Code are expressly provided a right to appeal parole decisions to the National Appeals Board under 28 C.F.R. §2.26, D.C. Code violators in Bureau of Prisons ("BOP") custody have no such right of appeal. 28 C.F.R. §2.26 is contained within subpart A of 28 C.F.R. Part 2, and applies only to U.S. Code violators--Subpart C, which applies to D.C. Code offenders, contains no similar provision. In addition, one section in Subpart C, 28 C.F.R. §2.89, incorporates certain sections in Subpart A by reference to make them applicable to D.C. Code offenders. However, Section 2.26, which provides the right to appeal to the National Appeals Board, is not one of the sections incorporated. Finally, the U.S.P.C. itself has consistently adhered to the position that D.C. Code violators have no right of appeal to the National Appeals Board. *See, e.g.*, http://www.usdoj.gov/uspc/questions.htm ("Decisions made under the District of Columbia are not eligible for the administrative appeal process. These prisoners must appeal through D.C. Superior Court."). Accordingly, D.C. Code offenders challenging parole denials by the U.S.P.C. have no administrative remedy to exhaust, and the Court may consider Perkins's petition on the merits.

**2.    Ex Post Facto Claim.**

Perkins first contends that, as applied to him, 28 C.F.R. §2.80 violates the *Ex Post Facto* Clause. Perkins asserts that the Constitution requires the U.S.P.C. to apply the parole laws in effect at the time when he committed the crime for which he was convicted, namely 9 D.C.R.R. 105.1(a)-(f) (1979).

3

The *Ex Post Facto* Clause prevents a legislative body from increasing the punishment for a crime after its commission. *Collins v. Youngblood*, 497 U.S. 37, 42 (1990); *Lindsey v. Washington*, 301 U.S. 397, 401 (1937). Changes in the rules to determine whether prisoners may receive parole which are applied to those already convicted may violate this restriction. *Weaver v. Graham*, 450 U.S. 24, 32 (1981). But not every change which affects the terms and conditions of a prisoner's confinement does so, only those that create "a sufficient risk of increasing the measure of punishment attached to the covered crimes." *California Dept. of Corrections v. Morales*, 514 U.S. 499, 508-09 (1995).

At least five Circuit Courts of Appeal, including the Sixth Circuit, have long held, however, that because the federal parole guidelines are not "laws" within the meaning of the *Ex Post Facto* Clause, their retroactive application states no constitutional claim. *McKissick v. United States Parole Comm'n*, 295 F.Supp.2d 643, 647 (S.D.W.Va. 2003 (collecting cases) (*citing Ruip v. United States*, 555 F.2d 1331, 1335 (6th Cir. 1977)); *Michael v. Ghee*, 411 F.Supp.2d 813, 820 (N.D. Ohio 2006). This conclusion appears to have survived the Supreme Court's holding in *Garner v. Jones*, 529 U.S. 244 (2000). In *Garner*, the Supreme Court held that a change in the Georgia Parole Board's parole *eligibility* rules, granting discretion to decrease the frequency of parole consideration hearings for certain classes of prisoners from three years to eight years, is subject to scrutiny under the *Ex Post Facto* Clause. Nonetheless, some courts have concluded that parole *suitability* guidelines are not subject to *ex post facto* review even after *Garner*. *See Glascoe v. Bezy*, 421 F.3d 543 (7th Cir. 2005) (distinguishing parole statute involved in *Morales* and rules addressed in *Garner* from parole guidelines; *citing Warren v. Baskerville*, 233 F.3d 204, 208 (4th Cir. 2000), and *Pindle v. Poteat*, 360 F.Supp.2d 17, 20 (D.D.C. 2003) (collecting cases)); *contra Fletcher v. District of Columbia*, 391 F.3d 250, 251 (D.C. Cir. 2004).

4

Even if the U.S.P.C. parole suitability guidelines for D.C. Code violators subject to the prohibition on *ex post facto* laws, courts have repeatedly sustained them against challenges by petitioners who are in circumstances functionally identical to Perkins. *See McKissick v. United States Parole Comm'n*, 295 F.Supp.2d 643, 648-50 (S.D.W.Va. 2003); *Terry v. Reilly*, 2006 WL 1133888, *4 (N.D.W.Va. 2006) (application of 2000 revision to U.S.P.C. parole guidelines to petitioner convicted in 1978 does not violate *Ex Post Facto* Clause). In those cases, as here, the same factors used by the U.S.P.C. to deny Perkins parole, including the extremely violent nature of his crimes, were express factors to be considered under the D.C. Code parole guidelines in effect at the time Perkins was convicted. D.C. Mun. Regs. tit. 28 §204.1, §204.4-.16; *Glascoe v. Bezy*, 421 F.3d 543, (7th Cir. 2005). Therefore, their application to him does not present "a sufficient risk of increasing the measure of punishment attached to the covered crimes." *California Dept. of Corrections v. Morales*, 514 U.S. 499, 509 (1995). Petitioner's *ex post facto* argument must therefore fail.

    3.    **Due Process Claim.**

Perkins next asserts that the U.S.P.C. violated his Due Process rights when it did not award him a Superior Program Achievement ("SPA") award in 2002 and 2005. In the July 30, 2002 Notice of Action, the U.S.P.C. does not make an express finding whether Perkins's program achievement was ordinary or superior, but on page three it indicates that no points were subtracted for a SPA award [Record No. 1, Exh. A]. However, in the D.C. Initial Hearing Summary dated July 23, 2002, the hearing examiner states on page two that:

> Overall, the subject would be found to have performed at a superior level, however, this examiner does not find that SPA should be granted in light of the seriousness of the multiple offenses committed and subject has not yet met the minimum accountability for his behavior.

5

The June 21, 2005 Notice of Action likewise implicitly fails to award Perkins a SPA award [Record No. 2, Exh. B]. The Prehearing Assessment dated May 3, 2005, sets forth the extensive list of institutional programs that Perkins completed and notes in its "Evaluation" section that "Superior program achievement may be warranted." The Hearing Summary dated May 29, 2005, while noting on page three that "[t]he subject has a consistent record of excellent program achievement," did not subtract any points for Superior Program Achievement in determining the Total Guideline Range.

Perkins argues, in essence, that the U.S.P.C. violated his due process rights when it found he had demonstrated superior program achievement but did not award him credit. To establish a violation of his Due Process rights, Perkins must demonstrate that (1) he has been deprived of a thing in which he possesses a protectible liberty interest, and (2) the procedures used to accomplish the deprivation were constitutionally deficient. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

For Perkins to satisfy the protectible liberty interest requirement, he must show that "the regulations contain 'explicitly mandatory language,' *i.e.*, specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Id.* at 463. Perkins argues that language "of an unmistakably mandatory character" requires a SPA award once the guidelines in Section 2 are satisfied. Perkins directs the Court's attention to 28 C.F.R. §2.80(e) and (k), which provide:

> (e) Program achievement. (1) **The Commission shall assess whether the prisoner has demonstrated ordinary or superior achievement** in the area of prison programs, industries, or work assignments while under confinement for the current offense. Superior program achievement means program achievement that is beyond the level that the prisoner might ordinarily be expected to accomplish. Credit for program achievement may be granted regardless of whether the guidelines for disciplinary infractions have been applied for misconduct during the same period. The guidelines in this section presume that the prisoner will have ordinary program achievement.

> (k) Guidelines for superior program achievement. If superior program achievement is found, **the award for superior program achievement shall be one-third of the number of months during which the prisoner demonstrated superior program achievement.** The award is determined on the basis of all time in confinement on the current offense in the case of an initial hearing, and on the basis of time in confinement since the last hearing in the case of a rehearing. If superior program achievement is not found, this step is not applicable.

*Id.* (emphasis added). The only mandatory language in these sections is that which states that the U.S.P.C. "shall assess whether the prisoner has demonstrated ordinary or superior achievement," and if so, "the award for superior program achievement shall be one-third of the number of months during which the prisoner demonstrated superior program achievement." This language only requires the U.S.P.C. to do two things: (1) assess whether the prisoner's program achievement is ordinary or superior, and (2) if superior, award one-third of the number of months the prisoner's achievement was superior. Neither of these sentences provide any parameters which constrain the exercise of the U.S.P.C.'s discretion to determine whether to grant a SPA award in the first instance.

Courts addressing this issue have looked to the language in 28 C.F.R. §2.60(a), which states:

> Prisoners who demonstrate superior program achievement (in addition to a good conduct record) **may be considered** for a limited advancement of the presumptive date previously set according to the schedule below.

*Id.* (emphasis added). The foregoing language establishes that, even if the U.S.P.C. determines that an inmate has demonstrated superior program achievement, it "may", but need not, advance the inmate's presumptive release date. This regulation therefore plainly fails to satisfy *Thompson*'s requirement that "a particular outcome *must* follow" once "the regulations' substantive predicates are present." *Thompson,* 490 U.S. at 463 (emphasis added). Without a protectible liberty interest, Perkins has no Due Process claim. *Pusey v. City of Youngstown,* 11 F.3d 652, 656 (6th Cir.1993); *Mitchell v. Horn,* 318 F.3d 523, 531 (3rd Cir. 2003); *Crutchfield v. United States Parole Comm'n,* 2006 WL 2034484, *6 (S.D.N.Y. 2006) (Commission's discretion not to award superior program

7

achievement cannot be reviewed so long as it does not lack a rational basis); *Almahdi v. Williamson*, 2006 WL 2261299, *2 (M.D.Pa. 2006) ("Because of the discretionary rather than mandatory language of the regulation, courts have held that the advancement of a convict's presumptive parole date is not required even where the prisoner has shown superior program achievement.") (citing *Kele v. Carlson*, 877 F.2d 775, 776 (9th Cir.1989); *Otsuki v. United States Parole Comm'n*, 777 F.2d 585, 587 (10th Cir.1985) (§ 2.60(a), plainly states advancement of release date not mandatory "even if superior program achievement has been shown"); *see also Pride v. Herrera*, 28 Fed.Appx. 891, 895 (10th Cir. 2001) (28 C.F.R. §2.60, which provides "[p]risoners who demonstrate superior program achievement ... may be considered for a limited advancement of the presumptive [parole] date" grants USPC *discretion* to advance parole date even where superior program achievement has been found); *see also Kelly v. Meifee*, 2003 WL 22845717, *15 (S.D.N.Y. 2003) (upholding Commission's denial of superior program achievement award under 28 C.F.R. 2.60(a) in light of petitioner's lengthy pre- and post-incarceration record). Perkins's Due Process claim must therefore be dismissed for failure to state a claim.

### 4. Claim that Departure from Guidelines was Arbitrary and Capricious.

Perkins's third claim is that the U.S.P.C.'s 2005 reconsideration decision to depart upwardly from the guidelines was arbitrary and capricious because it was based on a false premise by the U.S.P.C., namely that "the guidelines are established based upon one violent offense/murder. In your case you were convicted of two separate murders and an additional violent offense of sodomy." Perkins further asserts that this rationale to depart from the guidelines to deny him a parole date is inconsistent with the U.S.P.C.'s decision at his 2002 initial parole decision to stay within the guideline range to deny him a parole date. Finally, Perkins asserts that his felony murder conviction is not a "murder" conviction, but only a conviction for "aiding and abetting" murder.

It is well established that the Constitution does not, of its own force, provide a protectible liberty interest in parole. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979); *Ellis v. Dist. of Columbia*, 84 F.3d 1413, 1415 (D.C. Cir. 1996). Nor do the D.C. parole statute or the implementing U.S.P.C. regulations create one. *Id.* at 1415-20; *Blair-Bey v. Quick*, 151 F.3d 1036, 1047-48 (D.C.Cir.1998); *Simmons v. Shearin*, 295 F.Supp.2d 599, 602 (D.Md. 2003); *Muhammad v. Mendez*, 200 F.Supp.2d 466, 470 (M.D.Pa.2002); *Price v. Barry*, 53 F.3d 369, 370 (D.C. 1995). Therefore, Perkins cannot state a Due Process claim based upon an asserted violation by the U.S.P.C. of its own parole suitability regulations.

Perkins appears to mount a direct challenge to the rationality of the U.S.P.C.'s interpretation of its own regulations. Congress long ago vested responsibility for parole suitability determinations to the discretion of the U.S.P.C. *United States v. Addonizio*, 442 U.S. 178, 188 (1979). Because of that grant of authority, the function of judicial review of a U.S.P.C. decision on a petition for writ of habeas corpus is extraordinarily limited. The Court may not second-guess the U.S.P.C.'s judgment unless the exercise of its discretion represents an egregious departure from rational decision-making. *See Butler v. United States Parole Commission*, 570 F.Supp. 67-77 (M.D.Pa.1983); *Hackett v. United States Parole Comm'n*, 851 F.2d 127, 130 (6th Cir. 1987) ("'[T]he inquiry is only whether there is a rational basis in the record for the Commission's conclusions embodied in its statement of reasons.'").

With regard to the U.S.P.C.'s decision itself, this Court's review is quite circumscribed. A federal court reviewing a U.S.P.C. parole decision may only (1) satisfy itself that the Commission's decision was within its statutory and regulatory authority to act; and (2) ensure that the Commission's decision has a rational basis. *Kimberlin v. White*, 7 F.3d 527, 533 (6th Cir. 1993); *Hackett*, 851 F.2d at 129-30; *Farkas v. United States*, 744 F.2d 37, 39 (6th Cir. 1984). On the first

matter, Perkins does not suggest, nor could he, that the U.S.P.C. lacked the statutory authority to make his parole determination. On the second matter, "the inquiry is not whether the Commission's decision is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Commission's conclusions." *Hinson v. United States*, 205 F.3d 1340, 1999 WL 1296871 at *1 (6th Cir. 1999) (unpublished disposition). Factual determinations made by the U.S.P.C. in the process of making its parole determination are thus not subject to review. *Farkas*, 744 F.2d at 39 ("factual findings on these points are necessary components of the Commission's ultimate decision to deny parole and are not subject to review by this court."); *see also Goodman v. Hurst*, 47 F.3d 1168 (6th Cir. 1995) (applying *Farkas* to prisoners serving their sentence in a federal correctional facility for violation of the District of Columbia Code).

Applying these standards to Perkins's arguments, his claim must fail. The record herein reveals that the U.S.P.C., in the pre-hearing assessment, the examiner's hearing summary, and Notice of Action, fully reviewed the record and made its determinations in accordance with the applicable regulations. Perkins's argument that the U.S.P.C. erred in concluding that his "felony murder" conviction was not a murder conviction is plainly contradicted by the literal terms of the statute. In its 2002 initial parole consideration, the U.S.P.C. did not consider, let alone decide, whether the regulations used to determine his Base Point Score were premised upon one or many offenses because the applicable guideline range had already indicated a denial of parole. And the U.S.P.C.'s 2005 determination that his presumptive guideline range did not adequately account for the violence of his crimes is precisely the kind of determination expressly committed to the U.S.P.C.'s discretion. Because the record discloses ample justification for that discretionary determination, there is a

rational basis to support the Commission's decision to deny Perkins parole, and that decision is insulated from the Court's review. *Hackett*, 851 F.2d at 129.

### 5. Double Counting Claim

Perkins's final claim is that the U.S.P.C. engaged in impermissible "double counting" when it both (1) added 3 points to his Base Point Score under Category III because his current offense involved a high level of violence or resulted in the death of the victim, and (2) upwardly departed from the presumptive guideline range under 28 C.F.R. §2.80(n)(1) because Perkins was convicted on two murder counts and one count of sodomy, where the presumptive guideline range was premised on only one such offense.

Perkins's claim must fail. The Sixth Circuit long ago reviewed similar claims that the Commission had "double counted" in the parole context:

> Petitioner's second challenge goes to the practice of 'double counting' employed by the Commission to [both] fix a prisoner's offense severity rating and also, if warranted, to increase the prisoner's parole eligibility date beyond the recommended period. ...
>
> Various circuits have approved the practice of 'double counting' as consistent with the intent of Congress in passing the parole statutes. *Sotelo v. Hadden*, 721 F.2d 700 (10th Cir. 1983); *Alessi v. Quinlan*, 711 F.2d 497, 500 (2d Cir. 1983). Generally, the question of extending the parole date beyond recommended guidelines is left to the discretion of the Commission. *See Adams v. Keller*, 736 F.2d 320, 324 (6th Cir. 1984) (en banc). Considering the aggravating factors surrounding petitioner's case, the Commission did not abuse its discretion in extending petitioner's parole date.

*Robinson-Bobb v. Young*, 774 F.2d 1163, *2 (6th Cir. 1985) (unpublished disposition). *See also Persico v. Gluch*, 948 F.2d 1289 (6th Cir. 1991) (unpublished disposition) (rejecting double counting claim); *Simmons v. Shearin*, 295 F.Supp.2d 599 (D.Md. 2003).

28 C.F.R. §2.80(n)(2)(ii) provides a non-exclusive list of factors that may warrant a decision above the guidelines because the inmate presents a more serious parole risk than suggested by the

11

total point score. Of particular relevance to Perkins are (A), a "[p]rior record of violence more extensive or serious than that taken into account in the guidelines"; and (C), "[u]nusual cruelty to the victim (beyond that accounted for by scoring the offense as high level violence), or predation upon extremely vulnerable victim." As to the first, Perkins was convicted of not one violent murder, but two. As in *Sotelo*, the Commission's reason for giving Perkins 3 points in Category III, that his present offense involved a crime of high violence, was distinct from its reason for upwardly departing from the guideline range, namely his commission of multiple offenses involving high violence not otherwise fully reflected in his Base Point Score. In addition, Perkins was initially accused of rape, but after asserting consent as a defense, a jury found him guilty of only sodomy. The Commission may use such conduct, uncharged or even acquitted, as the basis to depart from the guideline range. *Sotelo*, 721 F.2d at 703. As to ground (C), the Commission noted that Perkins and his accomplices, while joyriding, found their first victim, a 51-year old female, and beat, kicked, and raped her. She subsequently died from her injuries. Their second victim was a male homosexual whom the group raped and robbed before they poured rubbing alcohol down his throat and drowned him in a bathtub, causing his death. Such facts are consistent with a finding of "[u]nusual cruelty to the victim." The facts unequivocally demonstrate that the Commission had a rational basis for its departure under 28 C.F.R. §2.80(n)(2)(ii)(A), (C). Perkins claim in this regard must be dismissed as meritless.

Accordingly, it is **ORDERED** as follows:

(1) Petitioner Perkins's petition for a writ of habeas corpus is **DENIED.**

(2) The Court certifies that any appeal would not be taken in good faith. 28 U.S.C. §1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997); *Kincade v. Sparkman*, 117 F.3d 949 (6th Cir. 1997).

(3) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the respondent.

This ___18th___ day of August, 2006.



Signed By:
David L. Bunning
United States District Judge